IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ZEIGENFUSE<br><br>　　　　　Plaintiff<br><br>　v.<br><br>KEMP & ASSOCIATES, INC.<br><br>　　　　　Defendant | CIVIL ACTION<br>NO. 14-05954 |

PAPPERT, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　MARCH 17, 2015

### MEMORADUM

　　Defendant Kemp & Associates, Inc. ("Kemp") is an "heir hunter."  (Am. Compl. ¶ 6, Doc. No. 6.)  Their business involves tracking down and contacting heirs who would otherwise not know that they are entitled to an inheritance.  (*Id*.)  Kemp understandably expects compensation for this service.  In this case, that compensation took the form of an agreement that Plaintiff David Zeigenfuse ("Zeigenfuse") would pay Kemp one-third of the amount of Zeigenfuse's inheritance.  (*Id.* ¶ 16.)  Zeigenfuse eventually inherited roughly $245,000 and Kemp was paid $77,563 from that inheritance.  (*Id.* ¶¶ 24, 25.)

　　Zeigenfuse now retrospectively attacks Kemp's business model.  He alleges Kemp's arrangement with him was champertous, void, unenforceable, and of no force and effect.  (*Id.* ¶ 30.)  He demands a full refund of the $77,563 paid to Kemp out of his inheritance.  Kemp moves to dismiss Zeigenfuse's claims, arguing, among other things, that the Alabama probate court that determined Zeigenfuse's inheritance also determined that the agreement between Zeigenfuse and Kemp was valid.  It argues that this Court cannot second-guess that determination.  Zeigenfuse disputes that the probate court ever considered the validity of the

agreement.  Construing the Amended Complaint in the light most favorable to Zeigenfuse, the Court denies Kemp's motion.

**Factual and Procedural Background**

In early 2007, Cary Douglas Piper ("Piper") died intestate in Alabama with an estate valued at approximately $3,000,000.  (Am. Compl. ¶¶ 7, 9.)  A petition for letters of administration was filed in the Probate Court of Covington County, Alabama.  (*Id.* ¶ 8.)  Less than a year after Piper's death, the Probate Court issued a Decree of Final Settlement declaring that Piper had no known living heirs, and the case was closed.  (*Id.* ¶ 10.)

Piper, however, did have living heirs, one of whom was Zeigenfuse.  (*See id.* ¶ 12.)  Shortly after the probate case was closed, a Kemp representative called Zeigenfuse at his Pennsylvania home and told him that he was an heir to an estate.  (*Id.* ¶ 15.)  At the time, Zeigenfuse was unaware of Piper's death or of his right to inherit from Piper's estate.  (*Id.* ¶ 17.)  Kemp, through its representative, did not give Zeigenfuse details about his right to inherit on this initial call.  (*Id.* ¶ 16.)  Rather, Zeigenfuse was informed that before Kemp would divulge further information, Zeigenfuse would need to execute an Assignment and Power of Attorney (the "Assignment") directing that Kemp receive one-third of the value of any assets Zeigenfuse would eventually inherit.  (*Id.* ¶ 16.)  The Assignment authorized Kemp to retain an attorney to establish Zeigenfuse's heirship, collect all assets due Zeigenfuse from the Piper estate, and fulfill the Assignment.  (*Id.* Ex. A ¶ 2.)  Zeigenfuse executed the Assignment at his home several days later.  (*See id.* ¶ 18.)  Zeigenfuse believes that Kemp also entered into similar assignment agreements with other heirs to the Piper estate.  (*See id.* ¶ 19.)

Kemp then hired Alabama attorney Gilbert M. Sullivan, Jr. ("Sullivan") to reopen the Piper estate case.  (*Id.* ¶ 19.)  Sullivan was to be paid a percentage of the funds payable to Kemp

under the assignment agreements. (*Id.* ¶ 21.) Therefore, while Sullivan was ostensibly representing the interests of the potential heirs in the probate case, he had a financial incentive to maximize the amount to be paid to Kemp under the assignments. (*See id.* ¶ 19.) Sullivan accordingly had an interest in ensuring that the assignments were not invalidated, in potential conflict with the interests of the heirs. (*Id.* ¶ 27.)

Sullivan filed a petition to reopen the Piper estate case, asserting the right of Zeigenfuse and other heirs to inherit from the estate. (*Id.* ¶ 22.) The Alabama probate court eventually entered an Order Determining Heirs, finding that Zeigenfuse was entitled to a 10% share of the Piper estate.[1] (See Mot. to Dismiss Ex. C, Doc. No. 8.) The probate court then entered a Decree of Partial Settlement directing that the estate administrator pay Sullivan $2,000,000. (Mot. to Dismiss Ex. D.) Sullivan was to distribute this money to the heirs according to their respective shares of the estate, including a payment of $200,000 to Zeigenfuse. (*Id.*) The Decree of Partial Settlement did not reference Kemp. Zeigenfuse alleges that Sullivan withheld one-third of Zeigenfuse's $200,000 payment and gave it to Kemp pursuant to the Assignment. (*See* Am. Compl. ¶ 25.)

Over three years later, the probate court entered a Decree of Final Settlement. (Mot. to Dismiss Ex. E.) The Decree of Final Settlement directed that $326,917.10 be paid to Albrittons, Clifton & Moody, PC Trust Account for distribution to the heirs, which included a $32,691.73 distribution to Zeigenfuse. (*See id.* ¶ 7.) The Decree of Final Settlement also provided for a payment of "$108,972.43 to Gilbert M. Sullivan, Jr. PC, Trust Account, FBO Kemp and Associates, as full payment for fees pursuant to the contract with the heirs." (*Id.* ¶ 6.)

---

[1] The Order Determining Heirs found the following to be lawful heirs of the Piper estate: James Murin (50% heir), Richard York (10% heir), Dale York, Sr. (10% heir), David Zeigenfuse (10% heir), Carol Walters Adams (10% heir), and Pamela Walters (10% heir). (*See* Mot. to Dismiss Ex. C.) Richard York, Dale York, Carol Adams, and the Chapter 7 Bankruptcy Trustee for Pamela Walters have attacked the validity of their assignment agreements with Kemp in a lawsuit filed in the Circuit Court of Jefferson County Alabama. (*See* Mot. to Dismiss Ex. F.)

3

Six days later, the Alabama probate court entered an Amended Decree of Final Settlement. (*See* Mot. for Leave to File Sur-reply Ex. A, Doc. No. 17.)² The Amended Decree of Final Settlement differs from the Decree of Final Settlement in several ways. First, it increases the commission due to the estate administrator by $4,302.20. (*See id.* ¶ 4.) Second, it deletes the paragraph directing a payment to Sullivan for the benefit of Kemp. (*See id.*) Third, it directs the $326,917.10 be paid to Sullivan – rather than Albrittons, Clifton & Moody – for distribution to the heirs. (*See id.* ¶ 6.) Zeigenfuse alleges that Sullivan withheld an additional payment for Kemp under this distribution. (*See* Comp. ¶ 25.) In all, Zeigenfuse alleges that he inherited approximately $245,000 from the Piper estate and Sullivan withheld "$77,563 from [this] inheritance and remitted those funds to Kemp, minus [Sullivan's] fee of approximately $7,563.00." (*Id.*)

Zeigenfuse filed suit in the Philadelphia Country Court of Common Pleas on September 15, 2014. (*See* Notice of Removal ¶ 3, Doc. No. 1.) Kemp removed the case to this Court based on diversity of citizenship jurisdiction. Zeigenfuse filed an Amended Complaint after removal. Zeigenfuse attacks the Assignment as champertous under Pennsylvania law. He asserts causes of action for rescission (Count I), restitution (Count II), fraud by misrepresentation (Count III), declaratory judgment (Count IV), unjust enrichment (Count V), conspiracy (Count VI), constructive trust (Count VII), conversion (Count VIII), and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count IX). He requests a declaration that the Assignment is void and unenforceable, return of the $77,563.90 paid to Kemp from his inheritance, punitive damages, and treble damages under UTPCPL. Kemp moves to dismiss all of Zeigenfuse's claims pursuant to Rule 12(b)(6) of the Federal Rules of

---

² Zeigenfuse attached the Amended Decree of Final Settlement as an exhibit to his motion for leave to file a sur-reply, but did not attach it as an exhibit to his sur-reply.

Civil Procedure for failure to state a claim upon which relief can be granted.  Zeigenfuse has filed a motion for remand, asking the Court to remand the case rather than dismiss it should the Court find that it lacks subject matter jurisdiction over the case.

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11.  Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  When making this determination, the court can consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The district court must "construe the complaint in the light most favorable to the plaintiff . . . ."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

**Discussion**

<u>This action as a collateral attack on the Alabama Court's decision</u>

Kemp does not specifically attack the sufficiency of the factual allegations of any particular Count in the Amended Complaint.  Rather, Kemp argues that Zeigenfuse's suit is "a masquerading attack on the final judgment of [the Alabama probate court]." (Mot. to Dismiss at 6.)  Kemp frames this basic argument under a number of related doctrines: full faith and credit,

collateral attack, *res judicata*, judicial estoppel, *Rooker-Feldman*, and comity.³  However articulated, Kemp's arguments on this point share the same basic premise that Zeigenfuse and/or this Court are bound by the judgment of the Alabama probate court, which issued the Decree of Final Settlement ordering a distribution to Kemp from the Piper estate "as full payment for fees pursuant to the contract with the heirs."  (Mot. to Dismiss Ex. E.)  Therefore, the Alabama probate court necessarily decided that the Assignment was valid.  (*See id.* at 9.)  It is improper for Zeigenfuse to attack the validity of the Assignment here.  (*Id.*)

Zeigenfuse counters by pointing to the Amended Decree of Final Settlement, which deletes the reference to the payment to Kemp.  (*See* Mot. for Leave to File Sur-reply Ex. A.)  Zeigenfuse argues that the Amended Decree "changed, replaced, and superseded the Decree of Final Settlement" so as to "completely eviscerate[]" Kemp's arguments based on the Alabama probate court's ruling on the validity of the Assignment.

Kemp's collateral attack arguments substantially hinge on the validity and effect of the Decree of Final Settlement, which Zeigenfuse has called into question.  For example, Kemp's arguments on full faith and credit, collateral attack, *res judicata*, the *Rooker Feldman* doctrine, and comity depend on the Decree of Final Settlement being a final and valid judgment on the merits of the Assignment's legality.  *See In re General Motors Corp. Pick-Up Truck Fuel Prods. Liab. Litig.*, 134 F.3d 133, 143 (3d Cir. 1998) (describing full faith and credit and *Rooker Feldman* doctrines as applying to final adjudications); *In re James*, 940 F.2d 46, 52 (3d Cir. 1991) (ruling that under principles of comity, "once validly entered in a court of competent jurisdiction, a judgment is considered valid until overturned or vacated by that court or an appellate court with supervisory powers over that court's system."); *In re Kovalchick*, 175 B.R.

---

³ The Court acknowledges that there are distinctions among these arguments.  Nevertheless, in the interest of brevity, the Court refers to these arguments, collectively, as the "collateral attack" arguments.

863, 871 (Bankr. E.D. Pa. 1994) ("[O]nce a state court judgment becomes final and is no longer subject to appeal, it may not be collaterally attacked by the parties in subsequent litigation, either in the state court or in a federal court."); *Smith v. Scott Paper Co.*, 620 So.2d 976, 977 (Ala. 1993) ("The elements of *res judicata* [include] a final judgment on the merits.").

Considering the Amended Decree of Final Settlement and drawing all reasonable inferences in Zeigenfuse's favor, the Court finds that these doctrines do not preclude Zeigenfuse's claims at this stage of the proceedings. It is not clear why the Alabama Court amended the Decree of Final Settlement to delete reference to the payment to Kemp, and it is not clear what, if anything, the Alabama Court adjudicated with respect to the validity of the Assignment. At the motion to dismiss stage, however, Zeigenfuse does not bear the burden of coming forward with evidence to support his claims. *See Harold v. Barnhart*, 450 F. Supp. 2d 544, 551 (E.D. Pa. 2006) ("The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.") (citing *Kost*, 1 F.3d at 183). If discovery reveals additional information regarding Kemp's collateral attack arguments, Kemp can raise the issue again at summary judgment.

Nor does the doctrine of judicial estoppel prevent Zeigenfuse from pressing his claims. A court may impose judicial estoppel only if a party changed its position in bad faith, i.e., "in a culpable manner threatening to the court's authority or integrity." *Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001). Accepting the facts in the Amended Complaint as true, the Court finds that there is no showing of bad faith to warrant application of judicial estoppel. Zeigenfuse alleges that "Sullivan had an ethical conflict of interest in primarily representing Kemp, and only representing [Zeigenfuse] and the other non-party heirs to the extent necessary to obtain the inheritance money to pay Kemp." (Am. Compl.

¶ 27.)  He further alleges that Sullivan's failure to contest the validity of the Assignment was the result of this conflict because Sullivan would be paid only if Kemp were paid.  (*Id.* ¶ 56.)  Therefore, Zeigenfuse's retention of un-conflicted counsel in this action provides a plausible good-faith basis for his change of position on the issue.  The Court will not dismiss Zeigenfuse's claims on judicial estoppel grounds.

*Forum non conveniens*

Kemp next contends that the Court should dismiss the case under the doctrine of *forum non conveniens* because "adjudication of the dispute in Pennsylvania is not only burdensome, but impractical."  (Mot. to Dismiss at 14-15.)  The doctrine of *forum non conveniens* allows a court to "dismiss a case when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems."  *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42 (3d Cir. 1988) (quotation omitted).

If a court entertaining a *forum non conveniens* argument finds that there is an adequate alternative forum[4], it must "consider and balance several [relevant] private and public interest factors . . . ."  *Id.* at 43.  The private interest factors include (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; (iii) possibility of view of premises, if view would be appropriate to the action; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Id.* at 46.  The public interest factors include (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies decided at home; (iii) the interest in having the trial of a diversity case in

---

[4]  The Court assumes for the sake of argument that Alabama would be an adequate alternative forum.

a forum that is at home with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflict of laws, or the application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 48.

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010) ("The defendant bears the burden of persuasion at each stage in the analysis, and a district court abuses its discretion if it fails to hold the defendant to its burden."). There is a "strong presumption" that the plaintiff's chosen forum is convenient, and that presumption can be overcome "only when the balance of the public and private interests clearly favors an alternate forum." *Windt v. Qwest Commc'ns Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008).

Here, Kemp fails to meet its heavy burden of showing that the balance of the public and private interests clearly favors an alternative forum. Kemp bases its *forum non conveniens* analysis largely on its collateral estoppel arguments. It contends that "[t]he locus of the dispute is in Alabama as the dispute centers on [Kemp's] entitlement to a distribution from the Piper Estate pursuant to the Assignment which [Zeigenfuse] executed." (Mot. to Dismiss at 14.) Zeigenfuse characterizes the dispute quite differently, as one "relat[ing] to the circumstances surrounding the contract signed in Pennsylvania by plaintiff, who is a Pennsylvania resident." (Opp'n Br. at 32, Doc. No. 10.) The parties also dispute the location of the critical witnesses and evidence. Kemp believes they are all in Alabama, and Zeigenfuse believes they are in Pennsylvania where he resides and Utah where Kemp is headquartered.

Taking all of the pertinent factors into account, the Court will not dismiss the claim on *forum non conveniens* grounds. There are most certainly witnesses and evidence located in

Alabama, especially when looking at Kemp's collateral attack defenses. Yet there are also likely to be witnesses and evidence in Pennsylvania and Utah. Furthermore, Zeigenfuse asserts his claims under Pennsylvania law. At best, the relevant factors tip slightly in favor of the Alabama forum. Those factors, however, do not "clearly favor" this alternative forum. Kemp's motion to dismiss on *forum non conveniens* grounds is accordingly denied.

Transfer of the case to the Southern District of Alabama

Short of dismissal under the doctrine of *forum non conveniens*, Kemp argues that the case should be transferred to the Southern District of Alabama under 28 U.S.C. § 1404. The Court will not transfer the case. Zeigenfuse chose to initiate his action in Pennsylvania. That decision "is paramount and should not be lightly disturbed." *Kallman v. Aronchick*, 981 F. Supp. 2d 372, 384 (E.D. Pa. 2013) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)) (quotation omitted). Neither party is a citizen of Alabama. Moreover, because a transfer under 28 U.S.C. § 1404 does not alter the underlying law applicable to the case, transfer could result in a federal court in Alabama applying unfamiliar Pennsylvania law to Zeigenfuse's claims. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."). Therefore, transfer would not alleviate – and could exacerbate - the federal-state issues raised by Kemp. Transfer to the Southern District of Alabama is improper under these circumstances.

Zeigenfuse's Motion to Remand

Zeigenfuse filed a motion requesting that the Court remand the case rather than dismiss it if the Court were to find that it lacked subject matter jurisdiction over this dispute. As the Court finds that it has subject matter jurisdiction, Zeigenfuse's Motion to Remand is denied as moot.

An appropriate order follows.

      /s/ Gerald J. Pappert
GERALD J. PAPPERT, J.