IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID ZEIGENFUSE

*Plaintiff,*

v.

KEMP & ASSOCIATES, INC.

*Defendant.*

CIVIL ACTION
NO. 14-05954

**PAPPERT, J.**                                             **November 25, 2015**

<u>**MEMORANDUM**</u>

Defendant Kemp & Associates, Inc. ("Kemp") seeks leave, after the close of discovery, to file an amended answer to Plaintiff David Zeigenfuse's ("Zeigenfuse") complaint.  The purported amended answer would also include, for the first time, counterclaims alleging common law fraud, conspiracy, wire fraud under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of contract and *quantum meruit*.  Kemp contends that it should be allowed to bring these new claims because information allegedly revealed during discovery supports them.

Kemp had all of the information it needed to assert its counterclaims well before the close of discovery yet failed to previously seek leave to amend.  It has also failed to provide any explanation for the delay in seeking amendment.  Allowing Kemp leave to expand the scope of the case at this stage would place an undue burden on the Court and prejudice Zeigenfuse.  The Court accordingly denies the motion.

**I.**

After the death of Alabama resident Cary Douglas Piper ("Piper") in 2007, the Probate Court of Covington County, Alabama issued a Decree of Final Settlement declaring that Piper had no known living heirs.  (Am. Compl. ¶¶ 7–9.)  Piper however did have living heirs, one of

whom was Zeigenfuse, a Pennsylvania resident.[1]  (*Id.* ¶ 12.)  Zeigenfuse was unaware of his status as an heir until March 2008, when a representative from Kemp, an "heir hunter," called and told him he had an interest in an estate.  (*Id.* ¶ 15.)  The representative would not disclose the identity of the estate until Zeigenfuse signed an Assignment and Power of Attorney (the "Assignment").  The Assignment allowed Kemp to receive 33% of the value of any assets Zeigenfuse eventually inherited.  (*Id.* ¶ 16.)  Once Zeigenfuse executed the Assignment, Kemp initiated the process of validating his interest as an heir.

After Kemp retained an attorney, Gilbert Sullivan, to validate Zeigenfuse's intestate interests, the Alabama probate court entered an Order Determining Heirs, finding that Zeigenfuse was entitled to a 10% share of the Piper estate.  (*Id.* ¶¶ 19, 23.)  The probate court then entered a Decree of Partial Settlement directing that the estate administrator pay Sullivan $2,000,000. (Mot. to Dismiss Ex. D.)  Sullivan was to distribute this money to the heirs according to their respective shares of the estate, including a payment of $200,000 to Zeigenfuse (the "First Distribution").  (*Id.*)  Kemp took 33% of the First Distribution per the Assignment and distributed the remainder to Zeigenfuse.  (Hr'g Tr. at 25:23–25.)

In 2012, Zeigenfuse retained his own counsel, Rick Clifton, to ensure that he had recovered everything to which he was entitled from the Estate.  (*Id.* at 20:9–23:7.)  In 2013, the Alabama probate court issued a second Decree of Final Settlement distributing the remaining assets in the Estate (the "Second Distribution")—a sum significantly smaller than the First Distribution.  (*Id.* at 24:12–25:11.)  For the Second Distribution, Zeigenfuse renegotiated Kemp's 33% fee down to 25%.  Kemp took its 25% share of the Second Distribution and the remainder went to Zeigenfuse.  (*Id.* at 25:15–26:5.)

---

[1]      In addition to Zeigenfuse, heirs to the Piper estate include: James R. Murin, Richard York, Dale E. York, Sr., Carol J. Walters Adams and Pamela G. Walters.  (Mot. to Dismiss, Ex. C.)

In September 2014, Zeigenfuse filed suit in the Philadelphia County Court of Common Pleas seeking to invalidate the Assignment.  On October 20, 2014, Kemp removed the case to this Court.  (ECF No. 1.)  Zeigenfuse filed his First Amended Complaint on November 28, 2014 seeking, in part, rescission, restitution, fraud by misrepresentation, and a declaratory judgment that the Assignment is void and unenforceable as well as an order for Kemp to pay Zeigenfuse the money it received from the Estate.  (*See generally* Am. Compl.)

The other heirs to the Piper estate also sued Kemp and Sullivan in state court in Alabama (the "Alabama Litigation") seeking the same relief that Zeigenfuse seeks here.  (Mem. Mot. for Leave at 3, ECF No. 31.)  Those heirs entered into similar arrangements whereby they agreed to give Kemp a portion of their inheritance in exchange for his services identifying the Estate. (Mot. to Dismiss, Ex. F ¶ 17, ECF No. 8.)  Like Zeigenfuse, they allege that the "agreements [with Kemp] were champertous" and should be declared "void as being unlawful and/or against public policy."  (*Id.* ¶¶ 36(c), 65(a).)  On May 22, 2015, Kemp filed counterclaims in the Alabama Litigation alleging fraud, RICO, breach of contract and *quantum meruit*.  (Opp. Mem. Mot. for Leave at 4–5, Ex. A, ECF No. 32.)  The counterclaims rely in part on a March 28, 2013 email from Clifton to Sullivan as evidence of a greater conspiracy to obtain the funds pursuant to the "settlement" whereby Kemp agreed to reduce his fee prior to the Second Distribution, and then file suit against Kemp and Sullivan to void the Assignment altogether.  (*Id.* ¶¶ 13–19.)

In the litigation before this Court, Kemp filed a motion to dismiss on a number of jurisdictional grounds.  (ECF No. 8.)  He argued that the "complaint should be dismissed in its entirely because it is an attempt to annul the judgment of the Alabama Circuit Court's decree of final settlement."  (*Id.* at 5.)  The Court denied Kemp's motion to dismiss, and thereafter issued a Scheduling Order on March 18, 2015.  (ECF No. 28.)  The Scheduling Order provides, in part,

3

that all discovery shall be completed by August 14, 2015, and motions for summary judgment submitted by September 14, 2015.  (*Id.*)  On April 10, 2015, Kemp filed an answer to the complaint, which did not contain any counterclaims.  (ECF No. 30.)

On August 24, 2014, ten days after the close of fact discovery, Kemp filed its motion for leave to amend, attaching the proposed answer and counterclaims (the "Motion").  (ECF No. 31, Ex. A.)  Zeigenfuse responded to the Motion on September 8, 2015.  (ECF No. 32.)  The Court heard oral argument on November 18, 2015.

## II.

Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'"  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (citing Fed. R. Civ. P. 15(a)).  While Rule 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).  The Third Circuit has left the decision of whether to grant or deny a motion for leave to amend within the sound discretion of the district court.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Generally, "[d]elay alone is not sufficient to justify denial of leave to amend."  *Id*. (referencing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).  However, "at some point,

the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams*, 739 F.2d at 868; *see also Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Thus, "the question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273 (referencing *Adams*, 739 F.2d at 868).

### III.

Kemp could have sought leave to file its amended answer and counterclaims far sooner than it did and has failed to provide a reason for the delay in seeking leave.  Critically, it unnecessarily waited until after the close of fact discovery and shortly before the filing of summary judgment motions to file its Motion.  Kemp argues that the Motion should be granted because "[d]uring the course of the parties' discovery, it has come to light that Plaintiff and his fellow heirs conspired to defraud Kemp.  Evidence of this conspiracy has been found in emails obtained by Kemp from the [Alabama Litigation]."  (Mem. Mot. for Leave at 4, ECF No. 31.) According to Kemp, those emails show that Zeigenfuse intended to allow Kemp to provide "its genealogical services," and then sue Kemp to invalidate the Assignment once he received the inheritance.[2]  (*Id.*)

However, Kemp was aware of these potential claims by, at the latest, May 22, 2015— more than three months before it filed the Motion.  (Hr'g. Tr. 33:8–13).  In the Alabama Litigation, Kemp filed counterclaims on that date alleging the same facts and theories of recovery in the proposed counterclaims here.  (Opp. Mem. Mot. for Leave at 4–5, Ex. A, ECF No. 32.)  Notably, it relies in its proposed counterclaims in part on the same March 28, 2013 mail

---

[2]      According to Kemp, one of the emails probative of Zeigenfuse's fraudulent intent is an email from Zeigenfuse to a fellow heir which states: "My thought process on all this is get what we can from the estate with a 'Final Decree' as quickly as possible and then move on to Gilbert Sullivan and [Kemp].  I am not sure how any of this will play out."  (Mem. Mot. for Leave at 4, ECF No. 31.)

from Clifton to Sullivan that it relied on in its May 22, 2015 counterclaims in the Alabama Litigation.  Although Kemp is not represented by the same counsel as it is in the Alabama Litigation, counsel here acknowledged that "[c]ertainly we knew that they were asserting that [counterclaim] down there.  Absolutely."[3]  (Hr'g. Tr. at 33:8–13).

Kemp is unable however to provide a reasonable explanation for its delay in filing the Motion.  It argues that its counterclaims "did not fully mature" until it took Zeigenfuse's deposition on August 5, 2015.  (Reply. Mot. for Leave at 4, ECF No. 34.)  Despite being "aware of our ability [to assert a counterclaim], we needed [Zeigenfuse's] deposition."  (Hr'g Tr. At 31:9–14.)  Kemp claims that up until August 5, 2015, it "simply had no understanding of Plaintiff's explanation for the emails, including whether Plaintiff would attempt to disclaim ownership of the emails."  (Reply. Mot. for Leave at 4, ECF No. 34.)  There is, of course, no requirement in the Federal Rules of Civil Procedure that a claim must "mature" or documents must be "authenticated" before a pleading can be filed.  Despite knowing that these same counterclaims had been asserted in the Alabama Litigation, Kemp then "made a judgment that [it] would wait" (for what turned out to be roughly three more weeks) until after it received the transcript from Zeigenfuse's deposition to file the motion for leave to amend.  (Hr'g Tr. at 39:2–12.)  Kemp did not need to depose Zeigenfuse in this case before it sought leave to bring its proposed counterclaims—and it certainly did not need to wait another several weeks to get the transcript from the deposition.

Kemp's unexplained delay resulted in the Motion being filed after the close of discovery.  "Forcing a party to reopen discovery . . . is significantly different from extending an approaching deadline to allow the parties to conduct additional discovery."  *AMS Const.,* 2006 WL 1967336,

---

[3]      Counsel also acknowledged that he has "an open line of communication" to Kemp's counsel in Alabama. (Hr'g Tr. 4:15–21.)

at \*4 (denying motion for leave to amend because of undue prejudice on non-moving party); *see also Tarkett Inc. v. Congoleum Corp.*, 144 F.R.D. 289, 291 (E.D. Pa. 1992) (denying in part motion for leave to amend) ("While Defendant has known of the existence of its documents found in plaintiff's possession since July 30, 1992, it elected to wait until October 22, 1992, long after the close of the previously established discovery cut-off . . . to file its motion for leave to amend.").  If the Court grants leave to amend, Zeigenfuse would need additional discovery, including the depositions of Clifton, Sullivan and the other heirs, in order to properly defend himself against the new counterclaims.  (*See* Opp. Mem. Mot. for Leave at 11, ECF No. 32.) The expansion of the case in this manner would unduly prejudice Zeigenfuse after the entirety of the litigation, including discovery and summary judgment briefing, has been focused on a narrower set of issues.

Further, granting the Motion would place an "unwarranted burden on the court." *Adams*, 739 F.2d at 868.  "A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985).  Granting Kemp's Motion would likely result in briefing on another motion to dismiss, and almost certainly result in re-opening discovery and re-briefing on the motions for summary judgment.  This would delay the resolution of this dispute and undermine the "inherent power" of the Court to manage its docket and decide cases.

BY THE COURT

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J